

EOD
09/17/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KENNETH MARSTON GOOD, | § | Case No. 08-40955 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 12-4148 |
| | § | |
| STATE OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDERS**

The chapter 7 trustee seeks to compel the State of Texas to turnover the portion of a federal tax refund it intercepted to pay Kenneth Good's delinquent, post-petition child support obligations. This proceeding is before the Court on the motion for summary judgment by the State. The trustee opposes the motion and seeks to strike the summary judgment evidence submitted by the State. This memorandum opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

### **MOTION TO STRIKE**

As an initial matter, the trustee seeks to strike virtually all of the summary judgment evidence submitted by the State. First, the trustee argues that much of the State's evidence should be stricken because the State failed to include "appropriate

1

citations" to the summary judgment record as required by the Local Rules of Bankruptcy Procedure. The Court, having reviewed the motion for summary judgment and the attached evidence, finds that the State's citations are appropriate under the circumstances, and that the trustee's motion to strike on that ground should be denied.

The trustee also seeks to strike any of the bankruptcy schedules filed in the underlying case from the summary judgment record. The trustee argues that the verified schedules filed by Good are hearsay and unreliable. There is no dispute that the schedules submitted by the State in support of their motion for summary judgment are accurate copies of what Good filed in his bankruptcy case.[1] Further, it appears the parties agree that the schedules are inaccurate inasmuch as they omit any mention of the federal tax refund at issue in this proceeding, and Good did not disclose his child support obligation in all of the places in the schedules where such obligations are normally included. The Court concludes that the trustee's motion to strike the bankruptcy schedules from the summary judgment record should be denied.

The remainder of the trustee's motion to strike involves facts that are not material to the State's summary judgment motion. The Court, therefore, concludes that the trustee's motion to strike should be denied in its entirety. The Court now turns to the merits of the State's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P.

---

[1] Indeed, a court may take judicial notice of related proceedings and records in cases before the same court. *Missionary Baptist Foundation of America v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983); *State of Florida Board of Trustees of the International Improvement Trust Fund v. Charley Toppino and Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

7056(c); FED. R. CIV. P. 56(a). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion at trial must be borne by the non-moving party, the party moving for summary judgment may satisfy the burden of production under Rule 56 by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Id.* at 331; *Lavespere v. Niagra Machine & Tool Works, Inc*., 910 F.2d 167, 178 (5th Cir. 1990). Thus, "in the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial." *Robinson v. Cutchin*, 140 F.Supp.2d 488, 491 (D. Md. 2001) (citing *Catrett*, 477 U.S. at 323-24 and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

In this proceeding, the State's motion and the trustee's response establish the following body of uncontested, relevant facts.

## FACTUAL BACKGROUND

Kenneth Marston Good and Ronna Moore divorced prior to Good's bankruptcy. Their decree of divorce required Good to make monthly child support payments to

Moore. Good filed for bankruptcy protection in 2008. The Court converted his chapter 11 case to chapter 7 in 2010.[2] The Office of the Texas Attorney General filed a timely proof of claim in the converted case, reflecting that Good was not making monthly child support payments to Moore and, as of September 2010, was in arrears in the amount of $8,075.

In 2011, the Office of the Texas Attorney General notified the Internal Revenue Service ("IRS") of the past due child support obligation owed by Good.[3] The IRS offset that obligation, in the amount of $14,390, from Good's overpayment of his federal taxes for the 2005 tax year. The IRS transferred $14,390 to the State in 2011, and the funds were applied to Good's post-petition child support obligation to Moore.

## ANALYSIS

### A.   The Parties' Claims and Arguments

In this adversary proceeding, the trustee contends that the $14,390 intercepted by the State is property of Good's bankruptcy estate. The trustee seeks to compel turnover of the funds pursuant to § 542 and avoid the interception as unauthorized under § 549 of the Bankruptcy Code. The trustee also seeks a finding that the State violated the automatic stay and that the interception is, therefore, void under § 362(a)(3) of the Bankruptcy Code.

In its motion for summary judgment, the State argues that its actions were not stayed by § 362. The State also argues, among other things, that the interception of the tax refund is not an avoidable transaction because the funds it intercepted are not property

---

[2] The Court's records reflect that Good died in August 2011.
[3] Domestic support obligations are not dischargeable in bankruptcy, *see* 11 U.S.C. § 523(a)(15), and are paid as a first priority — even before the expenses of administering a bankruptcy estate, *see* 11 U.S.C. § 507(a)(1)(A).

4

of Good's bankruptcy estate. The State seeks a summary judgment that the trustee should take nothing by way of this adversary proceeding.

B.     **Whether the State Violated the Automatic Stay**

Section 362 of the Bankruptcy Code proscribes creditors from collecting or attempting to collect from a debtor the moment the debtor files for bankruptcy. 11 U.S.C. § 362(a). The stay generally remains in effect until the court either grants or denies a discharge, closes the case, or the property is no longer part of the bankruptcy estate. 11 U.S.C. § 362(c). Section 362(b) excepts certain actions from the automatic stay. As relevant to this proceeding, § 362(b)(2)(F) excepts from the stay the interception of a tax refund under certain circumstances, such as to pay as domestic support obligations to state agencies.[4]

The Bankruptcy Abuse and Prevention Act of 2005 added § 362(b)(2)(F) to the Bankruptcy Code. Specifically, § 362(b)(2)(F) provides an exception to the automatic stay for the "interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law." Section 464 of the Social Security Act is codified in 42 U.S.C. § 664, Collection of Past-Due Support from Federal Tax Refunds. Section 664(a)(2) provides that:

> Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which such State has agreed to collect under section 654(4)(A)(ii) of this title ... the Secretary of Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual ... If the Secretary of Treasury finds that any such amount is payable, he shall withhold from

---

[4] Section 101(14A) of the Bankruptcy Code defines "domestic support obligation" in part as "a debt that accrues before, on or after the date of the order for relief in case under this title .... owed to or recoverable by .... a spouse, former spouse, or child of the debtor ... in the nature of alimony, maintenance or support ... of such spouse, former spouse, or child ... established or subject to establishment before, on or after the date of the order for relief in a case under this title.. by reason of applicable provisions of ... a separation agreement divorce decree, or property settlement agreement ..."

such refunds an amount equal to such past-due support, and shall concurrently send notice to such individual that the withholding has been made, including in or with such notice a notification to any other person who may have filed a joint return with such individual of the steps which such other person may take in order to secure his or her proper share of the refund.

The Fifth Circuit has not issued any opinions applying § 362(b)(2)(F). The trustee argues that the Court should read § 362(b)(2)(F) narrowly so that it only allows the interception of a tax refund to pay past due support obligations when the refund is not property of the estate. The trustee argues that it would be "absurd" to allow the State to intercept a tax refund that is property of the estate, because §§ 542 and 549 of the Bankruptcy Code would require the State to turnover the tax refund to the trustee if an interception occurred. Thus, the trustee's claim that the State violated the automatic stay hinges on the proper interpretation of § 362(b)(2)(F).

The starting point for interpreting a statute is the assumption that Congress acted carefully and specifically when drafting the provision. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1994); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994). The sole function of a court is to carry out the specific language of a statute and to avoid rendering words as mere surplusage. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). "Where the language is clear on its face, the court's inquiry should normally end." *In re Fuger*, 347 B.R. 94, 96 (Bankr. D. Utah 2006). *See also Lamie v. US Tr.*, 540 U.S. 526, 538 (2004) (refusing to expand scope of statute by reading into it absent or omitted words).

Proper construction of the applicable statute — § 362(b)(2)(F) — must begin with its plain language. It is well settled that "when the statute's language is plain, the sole function of the courts — at least where the disposition is not absurd — is to enforce it

6

according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (citations and internal quotations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992). Only in cases where the language of the statute is ambiguous or leads to absurdity should the Court look beyond the statute to try to ascertain the legislative intent. For language to be considered ambiguous, it must be susceptible to "more than one reasonable interpretation" or "more than one accepted meaning," *Carrieri v. Jobs.com, Inc.,* 393 F.3d 508, 519 (5th Cir. 2004) (citing *U.S. v. Kay,* 359 F.3d 738, 743 (5th Cir. 2004)), and the canon against absurdities is a very narrow exception to the plain meaning rule that is only employed "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470-71 (1989) (Kennedy, J. concurring in judgment).

Here, § 362(b)(2)(F) allows for the "interception of a tax refund." Section 362(b)(2)(F), unlike § 362(b)(2)(A)(iv), for example, does not limit its reach to non-estate property. The language of § 362(b)(2)(F) is clear on its face. Furthermore, as discussed below, this interpretation of § 362(b)(2)(F) is in harmony with §§ 542 and 549 and does not lead to an absurd result. The Court concludes that the State has established, as a matter of law, that it did not violate the automatic stay by intercepting a portion of Good's federal tax refund. *See also, e.g., In re McGrahan*, 459 B.R. 869, 874 (B.A.P. 1st Cir. 2011) (discussing the interplay between § 362(b)(2)(F) and § 1327); *In re Powers*, 2010 WL 942166 (Bankr. S.D. Ind. Mar. 12, 2010) (holding that interception of tax

refund did not violate the automatic stay); *Chambless v. Alabama Dept. of Human Resources*, 2008 WL 2782900 (Bankr. N.D. Ala. July 2, 2008) (same).

**C.    Whether the Trustee May Avoid the Interception and Compel Turnover**

Regardless of whether the State's actions violated the automatic stay, the trustee seeks to compel the State to turnover the $14,390 it intercepted from Good's tax refund. The trustee asserts that the $14,390 is property of Good's bankruptcy estate. Section 542 of the Bankruptcy Code generally requires the turnover of property of the estate to the bankruptcy trustee unless the property is of "inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). In addition, § 549 provides for the avoidance of a post-petition transfer of property of the estate "that is not authorized under this title or by the court." 11 U.S.C. § 549(a).

In its motion for summary judgment, the State argues that the intercepted portion of the refund was not property of Good's estate as a matter of law. According to the State, Good had no right to receive a refund to the extent the IRS offset his overpayment of federal taxes with his delinquent support payments. The State also suggests that the $14,390 is an inconsequential amount in light of Good's extensive business interests.

Section 541(a) generally makes "all legal or equitable interests of the debtor in property as of the commencement of the case" property of the bankruptcy estate. In general, a debtor's claim to a tax refund is property of the estate. *See Internal Revenue Serv. v. Luongo (In re Luongo),* 259 F.3d 323, 335 (5th Cir. 2001). However, the Internal Revenue Code ("IRC") authorizes offsets for payment of certain items delineated in 42 U.S. § 6402. Unless there is a net amount owing after offset, there is no actual tax refund

8

to become property of the estate in a debtor's bankruptcy case. *Luongo,* 259 F.3d at 335. As one bankruptcy court explained:

> Thus, the Fifth Circuit makes a distinction between a *claim* to a tax refund and an actual refund. A claim to a tax refund is property of the estate— *i.e.,* a contingent right to payment. However, for that contingent right to ripen into an actual right to payment, there must be monies still owing to the debtor's estate after offset has occurred. If there are no monies owing after offset, there is no actual refund to be paid to the estate— *i.e.,* 'the tax refund did not become property of the estate,' *Luongo,* 259 F.3d at 335, and there is no interest in property.

*In re Shortt*, 277 B.R. 683, 687 (Bankr. N.D. Tex. 2002).

Section 6402(c)[5] specifically authorizes offsets for payments of past due child support obligations. In this case, the IRS offset $14,390 from Good's 2005 tax refund to pay Good's delinquent child support obligations. The result of the offset under § 6402 is that Good has no right to receive the amount that has been offset. *Sorenson v. Sec'y of Treasury,* 475 U.S. 851, 859 (1986). The Court, therefore, concludes that the State has established, as a matter of law, that the $14,390 it intercepted was not property of Good's bankruptcy estate.

## CONCLUSION

For all the foregoing reasons,

---

[5] IRC § 6402(c) provides as follows:

> Offset of past-due support against overpayments. The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of such Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. The Secretary shall apply a reduction under this subsection first to an amount certified by the State as past due support under section 464 of the Social Security Act before any other reductions allowed by law. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

9

**IT IS ORDERED** that the trustee's motion to strike the State's summary judgment evidence is **DENIED**;

**IT IS FURTHER ORDERED** that and the State's motion for summary judgment is **GRANTED.** The Court will enter a separate judgment consistent with this memorandum opinion.

Signed on 9/17/2013

_Brenda T. Rhoades_   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE